**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.:

MARIA RENTERIA, an individual,
Plaintiff,

v.

EL TACO DE MEXICO, INC., a corporation; MARIA LUISA E. ZANABRIA, an individual; and SASHA ZANABRIA, an individual.
Defendants.

---

**COMPLAINT AND JURY DEMAND**
_____

### I.   INTRODUCTION

This is an action under the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 et seq. ("FLSA"), for retaliation, including discipline and discharge for exercising protected rights as an employee and making complaints of unlawful employment practices. The Plaintiff, Maria Renteria, is a former employee of Defendants El Taco de Mexico, Maria Luisa Zanabria, and Sasha Zanabria.

As alleged with greater particularity below, Defendants engaged in unlawful retaliation after Plaintiff complained to Defendants about their unlawful employment practices of not paying overtime wages, filed a complaint with the U.S. Department of Labor for those practices, and then refused to waive her rights to unpaid back wages and overtime. Plaintiff also brings Colorado state law claims of wrongful discharge, violation of Wage Claim Act, breach of contract, and unjust enrichment.

Plaintiff, by and through her counsel, complains against the Defendants as follows:

1

## II. JURISDICTION AND VENUE

1. This action is authorized and instituted pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 et seq. ("FLSA"), in that Plaintiff has been retaliated against because of her involvement in a U.S. Department of Labor investigation

2. This Court has subject matter jurisdiction over Plaintiff's federal law claim pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1367 because this claim seeks redress of Plaintiff's federal statutory rights.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims are so closely related to Plaintiff's federal retaliation claim that they form parts of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) because the unlawful employment practices alleged herein were committed within the jurisdictional boundaries of the United States District Court for the District of Colorado.

## III. PARTIES

5. Plaintiff, Maria Renteria is and was, at all relevant times hereto, a resident of the State of Colorado.

6. Defendant El Taco de Mexico, Inc. is a corporation organized and operating under the laws of the State of Colorado, with its principal place of business at 714 Santa Fe Dr., Denver, Colorado 80204.

7. At all relevant times specified herein, Defendant, Maria Luisa E. Zanabria, was the owner, officer, director and/or managing agent of El Taco de Mexico, Inc., and resides at 5500 W. Colorado Place, Lakewood, CO 80232. Ms. Maria Zanabria participated in the day-to-day

operations of El Taco de Mexico, Inc. and is jointly and severally liable with El Taco de Mexico, Inc.

8. Defendant, Ms. Sasha Zanabria, is the daughter of Defendant Maria Luisa Zanabria and became the onsite supervisor of El Taco de Mexico from on or about April 2013. Ms. Sasha Zanabria resides at 5500 W. Colorado Place, Lakewood, CO 80232. At all relevant times, Ms. Sasha Zanabria participated in the day-to-day operations of El Taco de Mexico, Inc., and is jointly and severally liable with El Taco de Mexico, Inc.

9. At all relevant times, Defendant El Taco de Mexico, Inc. was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA.

10. At all relevant times, Defendants handled food and cleaning supplies in interstate commerce, had annual gross revenue in excess of $500,000 and employed more than two people including Plaintiff.

11. At all relevant times, all three Defendants were employers of Plaintiff within the meaning of the FLSA, 29 U.S.C.A. § 203(d) and 29 C.F.R. § 791.2.

## IV.   GENERAL ALLEGATIONS

### Plaintiff's Employment

12. Plaintiff incorporates all foregoing paragraphs as set forth fully within.

13. Defendants employed Plaintiff from about November 1985 until about November 12, 2013.

14. Plaintiff worked as a cook for the Defendants continuously from the beginning of the employment until 1987 or 1988.

15. During the time period in paragraph 14, Plaintiff's wage was $8 per hour.

16. In 1987 or 1988, Plaintiff was promoted to the night shift manager positon.

3

17. Plaintiff held this night shift manager position continuously from about 1987 or 1988, until her termination on or about November 12, 2013.

18. As night shift manager, Plaintiff performed the same tasks and duties as she had before in the cook position such as cooking, cleaning, hosting, and serving. Plaintiff continued to work alongside other employees during these duties.

19. As night shift manager, Plaintiff's wage was $10.25 per hour until June 2013.

20. Plaintiff continuously had Mondays off from on or about 1985 to on or about 1998.

21. On or about 1998, Plaintiff requested to have Sundays off every week to go to church and spend time with her family.

22. Defendant Maria Luisa Zanabria granted Plaintiff's request and Plaintiff continuously had Sunday off until October 2013.

23. From on or about November 1985 to on or about April 2013, Defendant Maria Luisa Zanabria was in charge of day to day operations and on site management of the restaurant and supervision of the employees.

24. On or about April 2013, Defendant Sasha Zanabria became more involved and took over the day to day operations and on site managing of the restaurant and supervising the employees.

25. From on or about April 2013 to on or about September 2013, Defendant Maria Luisa Zanabria continued to come into the restaurant to help with the managing duties on a regular basis. On or about September 2013, Defendant Maria Luisa Zanabria's health improved and she became more involved with the day-to-day management of the restaurant.

26. Plaintiff regularly worked over forty hours a week beginning when Plaintiff started working for Defendants in 1985 until on or about October 2013.

27. Specifically, Plaintiff worked forty-four hours each week from on or about 1998 until on or about October 2013.

28. At all relevant times, upon information and belief, Defendants failed to maintain accurate and sufficient time records

29. At all relevant times, Defendants did not record Plaintiff's hours until on or about September or October 2013.

30. At all relevant times, Defendants never compensated Plaintiff for her overtime hours worked.

### Plaintiff's Tips

31. In addition to her hourly wage, Plaintiff received tips from customers for her services at the restaurant.

32. From on or about 1987 or 1988 to on or about April 2013, Plaintiff and the other employees on the night shift would divide the tips they received at the end of every day.

33. From on or about April 2013 to on or about October 11, 2013, Defendant Sasha Zanabria took all of the tips, including the cash and credit card receipts, for herself.

34. Defendant Sasha Zanabria told all of the employees, including Plaintiff, that the tips belonged to the restaurant owner and not the employees.

35. Defendant Sasha Zanabria told the Plaintiff that she would enter the tips as part of the Plaintiff's wages for tax purposes even though Plaintiff never received the tip money.

36. From on or about April 2013 to on or about October 11, 2013, Plaintiff never received any of the tips from the customers.

37. Defendant Sasha Zanabria never reimbursed Plaintiff for the tips she took.

38. These tips were not included in the Department of Labor's calculation of Plaintiff's unpaid overtime award pursuant to the investigation described in paragraphs #47-56 below.

### Plaintiff's Complaint to Defendant Sasha Zanabria

39. On or about May 2013, Plaintiff arrived to work five minutes late and Defendant Sasha Zanabria yelled at Plaintiff in the restaurant.

40. Specifically, Defendant Sasha Zanabria told Plaintiff that next time she was late, she was not going to pay Plaintiff for her hours worked.

41. In response, Plaintiff confronted Defendant Sasha Zanabria about working unpaid hours for so many years. Defendant Sasha Zanabria told Plaintiff that the restaurant was a business that required an extra hour to close.

42. Plaintiff also asked Defendant Sasha Zanabria if taking the tips from the employees was legal. Defendant Sasha Zanabria responded that she "did not care if it was legal."

43. Defendant Sasha Zanabria asked Plaintiff why she was asking about the restaurant's practices.

44. Defendant Sasha Zanabria told Plaintiff that if she asked about the restaurant practices again, she would be fired.

45. Later in June 2013, Defendant Sasha Zanabria called all of the employees in for a meeting and told them that she would continue to take the tips because the business pays taxes.

46. During that meeting, Defendant Sasha Zanabria told the employees that if they send her mother, Defendant Maria Luisa Zanabria, to the hospital for stress, "none of them would work at the restaurant anymore."

## Department of Labor Investigation

47. On or about May 31, 2013, Plaintiff contacted the U.S. Department of Labor and reported the Defendants for failure to pay Plaintiff for her overtime hours worked.

48. On or about June 6, 2013, the U.S. Department of Labor initiated an investigation in response to Plaintiff's report.

49. During its investigation, the U.S. Department of Labor inquired into the number of employees, the number of hours each employee worked, and how the hours were kept.

50. Upon information and belief, the U.S. Department of Labor did not inquire about the tips that Defendant Sasha Zanabria had taken from Plaintiff and the other employees.

51. On or about September 2013, the U.S. Department of Labor completed the investigation, finding that the Defendants owed the Plaintiff and three other employees unpaid overtime for the period between August 6, 2011 and August 3, 2013.

52. Specifically, the U.S. Department of Labor determined that Defendants owed Plaintiff $6,027.00 in overtime violations.

53. The U.S. Department of Labor did not include the tips or liquidated damages in their award.

54. On or about September 24, 2013, the Defendants entered into an agreement with the U.S. Department of Labor to pay the Plaintiff and three other employees the amounts owed for the unpaid overtime within three months.

55. On or about September 24, 2013, the Department of Labor investigator advised the Defendants against taking retaliation on employees for exercising their right over back wages or requiring employees to decline payment owed.

56. On or about September 24, 2013, the Department of Labor investigator advised the Defendants that tips were the property of the employees and as such, the Defendants could not interfere with them.

### Release Form

57. On or about October 26, 2013, Defendant Sasha Zanabria asked Plaintiff and the three other employees whom the Department of Labor determined were owed overtime to sign a release form.

58. Upon information and belief, the form asked Plaintiff to falsely state that Defendants did not owe its employees overtime.

59. Upon information and belief, the form Defendant Sasha Zanabria asked Plaintiff to sign was a relinquishment of her right to unpaid overtime and back wages.

60. Plaintiff and two other employees who were owed overtime refused to sign the form.

61. Plaintiff refused the sign the release form because she believed she had a legal right to unpaid wages and overtime and was exercising her right to refuse to waive those rights.

### Retaliation

62. Before the investigation began, Plaintiff was never disciplined or sanctioned by the Defendants.

63. Before the investigation began, Defendant Sasha Zanabria knew that Plaintiff's daughter worked as a paralegal.

64. After the U.S. Department of Labor began its investigation on or about September 2013, Defendant Sasha Zanabria asked Plaintiff if her daughter filed the complaint with the U.S. Department of Labor. Plaintiff responded that her daughter had not filed the complaint.

65. Notwithstanding Plaintiff's denial, Defendant Sasha Zanabria continued to suspect that either Plaintiff or Plaintiff's daughter filed the complaint with the Department of Labor.

66. After the U.S. Department of Labor began its investigation, Defendant Sasha Zanabria told another employee that she knew Plaintiff was the one who filed the complaint.

67. After the U.S. Department of Labor began its investigation on or about September 2013, Defendant Sasha Zanabria told Plaintiff: "You are going to regret this."

68. After the U.S. Department of Labor began its investigation, Defendant Sasha Zanabria started mocking Plaintiff in front of the other employees.

69. Specifically, Defendant Sasha Zanabria began imitating the way Plaintiff walked in front of her co-workers.

70. After the U.S. Department of Labor began its investigation, Defendant Sasha Zanabria forced Plaintiff to complete extra cleaning duties on top of her normal duties.

71. On or about October 22, 2013, Defendant Sasha Zanabria forced Plaintiff to stay extra time and re-clean the kitchen.

72. Defendant Sasha Zanabria did not compensate Plaintiff for the extra time she spent cleaning the kitchen.

73. On or about October 26, 2013, Defendant Sasha Zanabria asked employees, including Plaintiff, to sign a form saying that they were not owed overtime pay. Plaintiff and two other employees refused to sign the form.

74. Immediately after Plaintiff and two other employees refused to sign the release from, Defendant Sasha Zanabria told the employees that "there will be changes" to the work schedule.

75. On the schedule for the following week, Defendant Sasha Zanabria scheduled Plaintiff to work on Sunday and have Wednesday off.

76. Defendant Sasha Zanabria switched Plaintiff's work schedule with another employee who regularly had Wednesdays off.

77. Defendant Sasha Zanabria did not give Plaintiff or the other employees a reason for switching the schedules.

78. For the first time in sixteen years, Plaintiff was made to work Sundays.

79. Plaintiff worked on three consecutive Sundays with the new schedule before she called Defendant Sasha Zanabria on or about November 12, 2013 to ask about the schedule.

80. During that phone call, Plaintiff expressed that Sundays were sacred to her and wished to continue to have Sundays off to go to church.

81. Defendant Sasha Zanabria told Plaintiff that since she would not work Sundays, she could no longer work at El Taco de Mexico and then immediately hung up the phone.

82. Plaintiff understood that Defendant Sasha Zanabria had just terminated Plaintiff's employment.

83. During the next two weeks after Defendant Sasha Zanabria hung up on Plaintiff, Defendants did not contact Plaintiff and Plaintiff did not show up to work.

84. On or about November 25, 2013, Plaintiff filed for unemployment with the Colorado Department of Labor and Employment, Unemployment Insurance program.

85. The Colorado Department of Labor's investigator determined that Plaintiff was not disqualified from receiving unemployment benefits.

86. On or about January 30, 201, Plaintiff returned to Defendants in order to collect her W-2 form.

87. Defendant Sasha Zanabria handed over Plaintiff's W-2 and said "I don't want to see you in my restaurant. This place is not for you anymore."

## V.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 29 U.S.C. §§ 201 et seq. – FLSA Retaliation
### (Against all Defendants)

88. Plaintiff incorporates all other paragraphs as set forth fully herein.

89. Plaintiff engaged in activities protected under the FLSA including, but not limited to, the following:

   a. Making an oral complaint to her employer, Defendant Sasha Zanabria, about not being paid for her overtime hours and about Defendant Sasha Zanabria taking the employees tips.

   b. Filing a complaint with the U.S. Department of Labor concerning the unpaid overtime.

   c. Refusing to waive her rights to the unpaid overtime that the Department of Labor determined she was owed.

90. Plaintiff subsequently suffered adverse employment action by the Defendants when Defendants created a hostile work environment for Plaintiff and discharged or constructively discharged Plaintiff.

91. Plaintiff's engagement in the protected activities in paragraph 89 were the reasons for the adverse employment actions in paragraph 90.

## SECOND CLAIM FOR RELIEF
### Wrongful Discharge in Violation of Public Policy
### (Against all Defendants)

92. Plaintiff incorporates all other paragraphs as set forth fully herein.

93. During her time of employment, Plaintiff exercised an important work related privilege when she refused to sign a waiver of her right to unpaid wages and overtime that the Defendants asked her to sign.

94. Plaintiff did not sign the release form because she reasonably believed that the form falsely that the Defendants did not owe her unpaid wage and overtime.

95. Plaintiff did not sign the release form because she reasonably believed that it was her right and privilege as a worker to receive her unpaid wages and overtime.

96. After refusing to sign the form, Defendants harassed and discharged or constructively discharged Plaintiff.

97. The Defendants were aware, or reasonably should have been aware, that Plaintiff's refusal to sign the release form was based on Plaintiff's reasonable belief that the document was a false statement to government investigators and violated Plaintiff's legal right as a worker.

## THIRD CLAIM FOR RELIEF
### Violation of CWCA - C.R.S. §8-4-103(6), and 7 C.C.R. 1103-1:10
### (Against Defendants Sasha Zanabria and El Taco de Mexico, Inc.)

98. Plaintiff incorporates all other paragraphs as set forth fully within.

99. Defendants are engaged in a business where the practice is for patrons to give cash and credit card tips to employees.

100. From on or about April 2013 to on or about November 11, 2013, Defendant Sasha Zanabria unlawfully exercised ownership and control over all of Plaintiff's tip money.

101. As a result, Plaintiff did not receive any of the tips which were the sole property of her and the other employees.

### FOURTH CLAIM OF RELIEF
### Breach of Contract
### (Against Defendants Sasha Zanabria and El Taco de Mexico, Inc.)

102. Plaintiff incorporates all other paragraphs as set forth fully herein.

103. Defendants entered into an agreement with Plaintiff that the tip money provided by patrons would be split amongst the employees at the end of the shift.

104. Based on the longevity of this practice and the conduct of the parties, Plaintiff and defendants had an express and/or implied contract.

105. Defendants breached the contract when she took the tip money from on or about April 2013 to on or about November 12, 2013.

### FIFTH CLAIM OF RELIEF
### Unjust Enrichment
### (Against Defendants Sasha Zanabria and El Taco de Mexico, Inc.)

106. Plaintiff incorporates all other paragraphs as set forth fully within.

107. Defendants were conferred a benefit from taking the Plaintiff's tip money.

108. Defendants appreciated the benefit in being able to claim ownership over the money and putting the money back into the restaurant.

109. Defendants' acceptance of any benefit from taking Plaintiff's tips is under such circumstances that it would be unequitable for Defendants to retain the benefit at the expense of Plaintiff not receiving the tip money for which she is entitled.

## VI.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Order Defendants to make Plaintiff whole by providing appropriate back pay, and actual damages in the amount to be shown at trial to compensate Plaintiff for lost wages, benefits, and employment opportunities;

2. Order Defendants to make Plaintiff whole by providing appropriate front pay in an amount to be shown at trial;

3. Order Defendants to make Plaintiff whole by providing equitable restitution for her misappropriated tips.

4. Order Defendants to make Plaintiff whole by providing other appropriate compensatory damages including, but not limited to, mental anguish and emotional distress;

5. Order Defendants to make Plaintiff whole by providing appropriate liquidated damages pursuant to 28 U.S.C. § 216(b).

6. Award Plaintiff reasonable attorney's fees, costs, and expenses of this litigation as provided under 28 U.S.C. § 216(b).

7. Award Plaintiff pre-judgment and post-judgment interest;

8. Grant such other and further relief as this Court deems necessary and proper.

## VII.    <u>JURY DEMAND</u>

Plaintiff requests a jury trial on all questions of fact raised by this complaint.

Dated: October 1, 2014.

                                           Respectfully Submitted,

                                            *s/ Rajasimha Raghunath*
                                            Rajasimha Raghunath, Esq.

2255 E. Evans Ave. Ste. 335
Denver, Colorado 80208
Telephone: (720) 808-1231
Fax: (303) 871-6847
raghunathlawfirm@gmail.com

Counsel for Plaintiff

15